# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Robert Lee Fogle, Jr., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> Nancy Berryhill, Acting, ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> _____ ) | Civil Action No. 9:17-1503-RMG <br><br><br> **ORDER** |

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain relief from the final decision of the Commissioner of the Social Security Administration denying him Supplemental Security Income ("SSI"). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pretrial handling. The Magistrate Judge issued a Report and Recommendation ("R & R") on July 5, 2018, recommending that the Commissioner's decision be affirmed. (Dkt. No. 20). The Plaintiff has filed objections to the R & R, and the Commissioner has filed a reply. (Dkt. Nos. 22, 23). As explained below, the decision of the Commissioner is reversed and remanded to the agency for further action consistent with this order.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the R & R to which specific objection has been made, and may

accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme of the Social Security Act is a limited one. Section 405(g) of the Act provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is limited, "it does not follow, however, that the findings of the administrative agency are mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings." *Vitek*, 438 F.2d at 1157-58.

## Factual Background

Plaintiff, who was 35 years old at the time of his application for benefits in July 2013, was born with severe scoliosis, which produced chronic back pain into his adult years. Plaintiff presented to the emergency department at the Medical University of South Carolina ("MUSC") in February 2014, complaining that his back condition was causing him to "feel like my organs are being squeezed." Transcript of Record ("Tr.") 305. A spinal work up revealed a thoracic curve at T5-T11 of 69 degrees and a T1-L4 curvature of 39 degrees "with significant rotation."

Tr. 313. Although Plaintiff had no health insurance coverage, the physicians at MUSC felt it necessary to perform major spinal surgery on April 23, 2014 to address these severe congenital abnormalities. The surgery included posterior spine reconstruction from T4-L4 with a spinal fusion and two rods secured by pedicle screws. Tr. 329.

The record indicates that Plaintiff wounds healed from his surgical incision and his hardware was stable and in place. Tr. 342, 357. Plaintiff was told following his surgery that it was "impossible to predict his level of function," but his physicians hoped and expected that he would be able to return to some type of employment. Tr. 345. Plaintiff testified at his administrative hearing that while the surgery helped "a little," he experienced thereafter a decline in his level of function. Plaintiff testified could no longer physically attend his son's football games or assist in the care of his grandson. Tr. 52, 63. Instead, he required the assistance of his grandson at times to put on his shoes because "I can't really bend down." Tr. 59. Plaintiff reported that his fiancé does all of the cooking in the house and leaves him lunch because cooking requires too much standing. Id. He explained to the administrative law judge ("ALJ") that his mobility is limited by "a big rod in my back." Id. When the ALJ asked Plaintiff why he had so little post-operative treatment with all of these symptoms, he explained "I don't have no health insurance." Tr. 58.

The ALJ found that Plaintiff suffered from blindness in his left eye and "spine disorders," which he concluded were severe impairments under the Social Security Act. Tr. 17. The ALJ found those impairments significantly affected Plaintiff's ability to function in the job market and limited him to less than the full scope of sedentary work. Tr. 18. This included limiting Plaintiff to climbing stairs, stooping, kneeling, and crouching only on an occasional basis. Id. He was

also limited to requiring a sit/stand option for up to two times a day. Tr. 19.

The ALJ's order became the final order of the Commissioner, and Plaintiff timely filed an appeal to this Court. Plaintiff correctly noted that the ALJ's findings represented the lowest level of function possible without Plaintiff being deemed disabled under the Social Security Act and challenged the finding of the ALJ that he was able to stoop on even an occasional basis. (Dkt. No. 22 at 4). The Magistrate Judge recommended that the decision of the Commissioner be affirmed on the basis that there was substantial evidence in the record to support the decision.

## Discussion

The ability of a claimant to stoop is not a small matter when determining his residual functional capacity. "Stoop" is defined under Social Security Administration rules as the ability "to bend the spine alone," as contrasted with the ability to "kneel," which is defined as "to bend the legs alone." SSR 85-15, 1985 WL 56857 at *2 (1985). The ability to stoop occasionally (from very little to one third of the time) "is required in most unskilled sedentary occupations" and "a *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply . . ." SSR 96-9P, 1996 WL 374185 at *8 (July 2, 1996) (emphasis in the original).

Plaintiff asserts that his level of function declined after spinal fusion with instrumentation covering a significant portion of his lumbar and thoracic spine. This includes an inability to bend over, even to put on his shoes. Tr. 59. In rejecting Plaintiff's sworn testimony that he presently lacks the ability to bend, the ALJ pointed to a significant amount of evidence that arose prior to his spinal fusion surgery. This includes a pre-operative statement that he attended his son's football games and cared for his grandson, with the ALJ noting that such child care activities

required "by its very nature" a certain degree of stooping. Tr. 22. The ALJ also relied on the opinions of non-examining and non-treating chart reviewing physicians, who reviewed only Plaintiff's pre-operative records. Tr. 90-102, 103-106.

The only post-operative medical evidence noted by the ALJ regarding Plaintiff's level of function concerned a statement by one of Plaintiff's surgeons in the immediate post-op period that the future level of function was difficult to predict but it was expected Plaintiff would be able to return to work and brief references regarding Plaintiff's back status in office visits with an internist, Dr. Tu Anh Khuu, in August 2014 and February 2015. Tr. 21, 23. A review of Dr. Khuu's two notes reveal no evidence that he attempted to determine if Plaintiff could bend his back. The February 2015 office note documented "limited lumbar flexion," and the August 2014 note referenced "limited range of motion in terms of rotation side-to-side or the back or forward flexion at the hip." Tr. 361-2, 364. Since essentially half of Plaintiff's back was fused and secured by two steel rods, it is perhaps not surprising that Dr. Khuu did not make an assessment of Plaintiff's ability to bend his back.

The Court finds that there is not substantial evidence in the record to support the ALJ's finding that Plaintiff could occasionally stoop. This finding is potentially outcome-determinative, and there is an obvious gap in the record on this critical issue. There is no record evidence that any physician evaluated Plaintiff's ability to stoop post-operatively. The only record evidence is the Plaintiff's testimony that he is unable to bend and requires assistance to put on his shoes. Tr. 59. There is also record evidence that Plaintiff's lack of follow up medical care is related to the absence of health insurance and the inability to otherwise pay for routine medical care. Tr. 58.

The ALJ has the duty to develop a "full and fair record" to correct gaps or deficiencies in the record where "such evidence is necessary to a fair determination of the claim." *Thompson v. Sullivan*, 933 F.2d 581, 585-86 (7th Cir. 1991); *Tint v. Colvin*, C.A. No. 1:15-1996-RMG, 2016 WL 1213227 at *3 (D.S.C. 2016); *Rivera v. Astrue*, C.A. No. 10-4324-RJD, 2012 WL 3614323 at *12 (E.D.N.Y.) (recognizing that while the ALJ's duty to complete the record is heightened when the claimant is *pro se*, "the duty exists when the claimant is represented by counsel"). A "full and fair record" cannot be established here without a focused evaluation of Plaintiff's ability post-operatively to stoop–that is the ability "to bend the spine alone." SSR 85-15 at *2.

Further, it is imperative that the claimant's disability decision not turn on the issue of his poverty since the record indicates he had no health insurance and lacked the resources to pay for his medical care. As the Fourth Circuit observed in *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986), "it flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him." This Court noted the ALJ's skeptical questioning of Plaintiff, "why have you had so little medical treatment. Why haven't you been to the doctor more?" Plaintiff's reply was simple and direct: "I didn't have no health insurance." Tr. 58.

## Conclusion

Based upon the foregoing, the decision of the Commissioner is reversed pursuant to Sentence Four of 42 U.S.C. § 405(g) and remanded to the agency for further proceedings consistent with this order.

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

August 6, 2018
Charleston, South Carolina